# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# KNOXVILLE DIVISION

**KUSH ENTERPRISES, LLC,**

    **Plaintiff,**

**v.**                                          **No: _____**
                                                      **JURY DEMANDED**

**MASSACHUSETTS BAY**
**INSURANCE COMPANY,**

    **Defendants.**

## COMPLAINT

COMES NOW the Plaintiff, Kush Enterprises, LLC, by and through counsel, and submits the following for its Complaint against Massachusetts Bay Insurance Company:

### PARTIES AND JURISDICTION

1. Kush Enterprises, LLC ("Plaintiff") is a Tennessee limited liability company with its principal office located at 335 E. Parkway, Gatlinburg, Tennessee. Plaintiff's members are residents of the State of Tennessee. At all times relevant hereto, Plaintiff was the owner of the structures and personal property located at 335 E. Parkway, Gatlinburg, Tennessee (the "Insured Premises").

2. Massachusetts Bay Insurance Company ("Defendant") is an insurance company conducting business in the State of Tennessee, including Sevier County, Tennessee. Defendant's principal place of business is located in the State of Massachusetts, and Defendant was organized under the laws of the State of Massachusetts. Defendant is a subsidiary of the Hanover Insurance Group.

3. This Complaint originates as the result of the November 2016 wildfires and an associated windstorm that caused substantial insured losses to the structures located on the Insured Premises, and Defendant's failure and refusal to (a) promptly and fully pay Plaintiff's insurance claim, and (b) allow the insurance policy's appraisal clause to resolve the parties' dispute concerning the amount of the loss.

4. Complete diversity of citizenship exists pursuant to 28 U.S.C. § 1332 and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. Jurisdiction and venue are proper in this Court.

## FACTS

5. At all times relevant hereto, Plaintiff was insured pursuant to an insurance contract whereby Defendant agreed to insure the commercial buildings located at the Insured Premises against property damage, bearing Policy No. ZD5 9543843 04 (the "Policy"). As relevant hereto, the Policy's term was May 7, 2016 to May 7, 2017.

6. A certified copy of the Policy has been requested from Defendant but not yet provided as of the date of the filing of this Complaint. An uncertified copy of the declarations, endorsements and relevant coverage form is attached hereto as Exhibit "A." However, the attached policy materials are believed to be incomplete, and the record will be supplemented once a certified copy of the policy is received.

7. At all times relevant hereto, the Insured Premises consisted of two commercial buildings and surrounding area, which Plaintiff operated as a hotel and short-term apartment rentals known as the Sleep Inn and Suites and Sleep Inn Apartments.

8. The Policy provided insurance coverage for direct physical loss to the buildings located on the Insured Premises and such other insurance coverage as specifically set forth in the Policy.

9. The Declarations page of the Policy reveals that insurance coverage was provided for the buildings, business personal property, and loss of business income/extra expense located on the Insured Premises. The structure limits on the buildings were $3,655,808 and $478,067.

10. The Policy was an "all-risks" policy, meaning that the Policy covered all risks of direct physical loss or damage except for those specifically excluded or limited by the Policy.

11. The Policy's coverage for the buildings and structures on the Insured Premises was on a replacement cost valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation.

12. Pursuant to the Policy, Plaintiff paid an annual premium to Defendant in exchange for insurance coverage. Plaintiff paid the required premiums at all times relevant to this Complaint.

13. In late November 2016, the buildings on the Insured Premises were infested and damaged by the accumulation of soot, char, ash residue, and other wildfire debris generated as a result of the Chimney Tops 2 wildfire that struck the area, resulting in substantial direct, physical loss. The direct physical loss and damage to the buildings and business personal property at the Insured Premises shall hereafter be referred to as the "Loss."

14. The Chimney Tops 2 wildfire started in the Chimney Tops area of the Great Smoky Mountains National Park, approximately 5.5 miles south of the City of Gatlinburg on November 23, 2016. A high wind-driven firestorm on November 28, 2016 and into November 29, 2016 pushed the wildfire, smoke, and embers into Gatlinburg and led to evacuation of most city

residences and visitors, impacting over 2,500 structures, and resulting in three deaths in the city and eleven more in Sevier County. The evacuation order was lifted on December 9, 2016.

15. Conditions at the Insured Premises at the time of the firestorm included thick smoke, with extremely low visibility, twilight illumination, falling ash resembling snow, high winds (over seventy miles per hour), and flying debris. The interior of the hotel at the Insured Premises was smoky with fire debris in the air. Air quality remained hazy and poor for several days after the firestorm.

16. After the Loss, the buildings on the Insured Premises were infested with soot, char, and/or ash.

17. Plaintiff promptly reported the Loss to Defendant.

18. Plaintiff fulfilled all of the duties after the Loss that were imposed upon it by the Policy to the satisfaction of Defendant.

19. As it relates to the Loss, there is no applicable exclusion. The Loss is a compensable claim under the Policy.

20. Defendant acknowledged that the Loss is a compensable claim and made partial payments on the claim.

21. Utilizing the funds initially paid by Defendant, Plaintiff engaged in extensive cleaning of the buildings, including the interior walls and all surfaces, deep cleaning of carpets, pressure washing of exteriors, etc.

22. The payments made by Defendant to Plaintiff are insufficient to indemnify Plaintiff for the Loss pursuant to the Policy.

23. Plaintiff advised Defendant that the payments made were insufficient to indemnify it for its losses and submitted a supplemental claim for the additional restoration costs necessary to properly remediate the buildings on the Insured Premises.

24. By letter dated December 1, 2017, Plaintiff advised Defendant that it was invoking the Policy's appraisal clause because of the lack of an agreement regarding the differences between Plaintiff and Defendant regarding the amount of the loss.

25. The Policy's appraisal clause provides as follows:

**Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by and two will be binding. Each party will:

a. Pay its chosen appraiser; and
b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

26. Plaintiff selected Chuck Howarth, President of The Howarth Group, as its appraiser.

27. To date, Defendant has not selected an appraiser.

28. In response to Plaintiff's appraisal demand, Defendant requested that Plaintiff submit an itemized claim.

29. Thereafter, Plaintiff requested that its appraiser complete his appraisal of the loss so that an itemized claim could be submitted as requested by Defendant.

30. As part of the determination of the amount of the loss, Forensic Building Science ('FBS") inspected the buildings on the Insured Premises and conducted soot and char sampling to

<mark>5</mark>

be sent to a qualified laboratory for testing. The sampling and testing (which was conducted over several months and involved multiple trips and sampling dates) revealed that smoke soot and char, consistent with wildfire, was present in the buildings. Based on the sampling, FBS determined a protocol for repairs, which Plaintiff's appraiser utilized to determine the amount of the loss.

31. The FBS reports and associated lab testing confirmed the presence of wildfire residue in the form of char, ash, and other wildfire indicators at high levels.

32. Wildfire residue exists in the buildings at the Insured Premises that was not present prior to the November 2016 wildfire.

33. The wildfire residue poses a health risk to the buildings' occupants and it is critical that appropriate restoration be accomplished.

34. Standard protocol requires post-cleaning testing (for which Defendant did not pay in its initial payments after the loss) and Defendant has not properly paid to clean, seal, and paint numerous infested areas in the buildings.

35. Defendant's payments to date are inadequate to properly remedy the deposits of smoke and soot all over and within the surfaces and cavities of the Insured Premises, including areas which Defendant has never paid to clean, repair or restore.

36. Plaintiff has not been properly compensated for the damage to its buildings. Despite extensive restoration efforts, a smoke odor is still present, and soot testing has confirmed the presence of wildfire residue in places for which Defendant has not paid to clean, treat, or properly repair.

37. On or around September 10, 2018, Plaintiff submitted Sworn Statements in Proof of Loss to Defendant, making a supplemental claim under the Policy for the insured buildings that were damaged as a result of the Loss. The proofs of loss were submitted in the amounts of

$2,436,816.49 (hotel building) and $216,205.19 (apartment building). The proof of loss was accompanied by an estimate prepared by Plaintiff's appraiser which was based on the findings and testing of FBS and standard industry protocol.

38. Plaintiff also provided Defendant with reports from Forensic Building Science ("FBS") which showed the presence of char, ash, and soot in the buildings. Specifically, following sampling conducted at the Insured Premises, FBS concluded that soot and ash remained throughout the roof assemblies, window assemblies, interior partition walls, light fixtures, ducting, floor, ceiling and wall cavities, etc.

39. Defendant has never responded to the proofs of loss submitted by Plaintiff even though more than 60 days have passed since submission of the proofs of loss.

40. At Defendant's direction, Greg Vorhis with Coastal Technical Services conducted additional sampling for soot and char testing. Mr. Vorhis conducted his inspection on September 25, 2018. To date, Defendant has not advised Plaintiff of the results of Mr. Vorhis' sampling and testing.

41. With respect to legal actions against Defendant, the Policy provides that Plaintiff may not bring a legal action against [Defendant] unless "the action is brought within 2 years after the date on which the direct physical loss or damage occurred."

42. On October 26, 2018, Defendant advised Plaintiff that it was aware that the "two-year mark" was approaching and that it would "work to reasonably move this claim along."

43. On November 9, 2018, Plaintiff requested that Defendant enter into a Tolling Agreement to allow Hanover additional time to respond to the claim and appraisal demand.

44. On November 15, 2018, Defendant advised that it would "not agree to any tolling of the policy."

7

45. Although the claims process is still ongoing and Plaintiff desires to resolve the claim by agreement with Defendant or through the appraisal process as outlined by the Policy, Plaintiff files this lawsuit out of an abundance of caution and to avoid any claim by Defendant that Plaintiff failed to comply with the contractual limitations period as set forth in the Policy.

46. To date, Defendant has failed to make full payment to Plaintiff for its covered loss. Defendant refused, and still refuses, to allow the contractual appraisal process to resolve the parties' dispute concerning the amount of the loss.

47. Defendant's failure and refusal to pay the money and benefits due and owing Plaintiff under the Policy and refusal to submit the claim to appraisal has caused Plaintiff to initiate this Complaint to recover the insurance proceeds to which it is entitled.

## CAUSES OF ACTION

### Count 1 – Breach of Contract

48. The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

49. The Policy issued by Defendant is a binding contract and is supported by valid consideration.

50. Defendant is in total material breach of the Policy, and Defendant is liable to Plaintiff in the maximum amount allowed by the Policy for the Loss. Specifically, Defendant's breach of contract includes the following, without limitation: (a) Defendant's failure and refusal to pay the amounts owed to Plaintiff for the Loss pursuant to the insurance coverage afforded by the Policy; (b) Defendant's failure and refusal to timely respond to Plaintiff's claim and appraisal demand; and (c) Defendant's refusal to honor Plaintiff's demand for appraisal as outlined in the Policy.

8

Case 3:18-cv-00492-CLC-DCP   Document 1   Filed 11/20/18   Page 8 of 10   PageID #: 8

51. As a result of Defendant's breach of contract, Plaintiff has sustained substantial compensable losses for the amounts claimed under the Policy.

52. Defendant is liable to Plaintiff for its losses.

**Count 2 – Declaratory Judgment**

53. The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

54. An actual controversy exists between Plaintiff and Defendant within the meaning of 28 U.S.C. § 2201 and this Court is vested with the power to declare and adjudicate the rights and legal relationships of Plaintiff and Defendant with respect to the issues raised herein.

55. Plaintiff invokes the power of this Court to declare its rights as it relates to Defendant's payment obligations to it as a result of the Loss, as well as the parties' rights and responsibilities as it relates to the Policy's appraisal clause as properly invoked by Plaintiff. Specifically, Plaintiff requests that the Court declare that Defendant is obligated to appoint an appraiser and proceed with appraisal to determine the amount of the loss.

WHEREFORE, as a result of the foregoing, Plaintiff would respectfully request that this Honorable Court award a judgment to Plaintiff as follows:

A. For specific performance of the Policy's appraisal clause;

B. For compensatory damages in an appropriate amount to be determined by the jury;

C. That the Court adjudicate and declare the parties' rights and obligations under the Policy, and specifically as it relates to the Policy's appraisal clause;

D. For all costs incurred by Plaintiff as a result of this action;

E. For pre- and post-judgment interest; and

F. For such other further and general relief as this Court deems just and equitable.

**JURY DEMAND**

Plaintiff demands a jury.

Respectfully submitted,

GILBERT McWHERTER
SCOTT & BOBBITT PLC


/s/ J. Brandon McWherter_____
J. BRANDON McWHERTER #21600
bmcwherter@gilbertfirm.com
JONATHAN L. BOBBITT #23515
jbobbitt@gilbertfirm.com
341 Cool Springs Blvd, Suite 230
Franklin, TN 37067
Telephone: (615) 354-1144

CLINTON H. SCOTT #23008
cscott@gilbertfirm.com
101 North Highland
Jackson, Tennessee 38301
Telephone: (731) 664-1340

*Attorneys for Plaintiff*
